WARD COUNTY WATER IMPROVEMENT DIST. NO. 3 et al. v. WARD COUNTY IRR. DIST. NO. 1 et al.   (No. 1266.)

(Court of Civil Appeals of Texas. El Paso. Dec. 21, 1921. Rehearing Denied Feb. 2, 1922.)

1. Waters and water courses ☞152(11)— Former judgments fix law as to water rights, though not ordering issue of process.

An agreed judgment between parties in a federal court and a judgment of state court thereon concerning water rights were res adjudicata as to such rights, but did not deprive court of power to entertain jurisdiction to enforce such adjudicated rights, and it was immaterial that there was no process ordered to issue; it being provided that processes of the court would be issued upon proper showing that such property rights were violated, until which no restraining orders were necessary.

2. Waters and water courses ☞152(7)—Testimony held inadmissible on plea in bar in suit to enjoin diversion of water.

In a suit to restrain defendants from diverting water to which plaintiff was entitled, court did not err in rejecting testimony on plea in bar offered to prove the customary diversion of water by defendants and their predecessors, because, if admissible, it would be in the hearing upon the main case to show that defendants were not taking water to which plaintiff was entitled, and for that reason no restraining order should be issued against defendants, but not upon any question pleaded in bar.

3. Parties ☞83—Defendants held not entitled to complain of dismissal of cross-action by reason of lack of diligence.

In action to confirm and enforce water rights under agreements and judgments, in which individual water users of plaintiff were not necessary parties, defendants, who asked that the individual water users be made parties, cannot complain of dismissal of cross-action against them where they did not seasonably make them parties after postponement for that purpose.

4. Parties ☞32—Plaintiff not required to make unnecessary parties defendant.

Plaintiff is not required to make parties defendant to its suit so that some matter between the defendants and such other parties about which it has no interest may be litigated.

5. Estoppel ☞78(1)—Plaintiffs held not estopped by violation of temporary injunction.

In action for writ of injunction restraining defendants from diverting water to which plaintiff was entitled under judgments, defendant cannot contend that, by violating the letter and spirit of a temporary injunction by entering into a contract with an upper appropriator to divert water above defendants' headgate and deliver it on plaintiff's land, plaintiff was estopped as to its rights under the judgments.

6. Waters and water courses ☞152(11)—Decree held not to deprive defendants of right to use water not used by plaintiff.

A decree enjoining defendants from using water, except for 5½ days each month, and awarding plaintiff title to a certain amount of water, held not to be construed to prevent defendants from taking water at any time when not used by plaintiff, as such a construction would render it erroneous.

7. Waters and water courses ☞152(3)— Pleadings held to warrant order restraining diversion of water.

Pleadings in suit to confirm judgments and for a writ of injunction restraining defendants from diverting water to which plaintiff was entitled for the purpose of irrigating land held sufficient to support a restraining order.

8. Waters and water courses ☞151—Changing headgate without authority does not forfeit water rights.

Appropriator of water did not forfeit water rights by changing its headgate without authority of the board of water engineers of the state, though liable for a penalty.

9. Appeal and error ☞488(2)—Temporary injunction remained in effect pending appeal.

Where temporary injunction order was not appealed from and defendants answered that it had obeyed it, it remained in effect pending appeal from final judgment restraining appropriation of water during stated times.

10. Appeal and error ☞1152—Formal decree reformed for erroneous matters therein where motion of appellee for new trial was overruled.

Where appellee instituted three successive suits to prevent defendant from encroaching on water appropriations, and in each instance secured an affirmative judgment in its favor, but was not satisfied with the last judgment and filed a motion for a new trial, which was overruled, case will not be reversed for erroneous matters contained in the formal decree, which will be reformed and affirmed in accordance with the true meaning of the verdict and in consonance with rules of law applicable.

Appeal from District Court, Reeves County; Chas. Gibbs, Judge.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by Ward County Irrigation District No. 1 against Ward County Water Improvement District No. 3 and others. Judgment for plaintiffs, and certain defendants appeal. Reformed and affirmed.

Lee Monroe, of Topeka, Kan., and B. W. Baker, of Midland, for appellants.

Hudson & Starley, Jno. B. Howard, J. A. Drane, J. F. Ross, and Harry MacTier, all of Pecos, for appellees.

HARPER, C. J. Ward county irrigation district No. 1 filed this suit against the Biggs Irrigation Company and others on two judgments to confirm same, and for a writ of injunction restraining defendants from diverting water from the Pecos river to which plaintiff was entitled for the purpose of irrigating the land under its system.

### Statement of the Case.

The Barstow Irrigation Company was organized for irrigation purposes as a private corporation in 1889, and plaintiff now owns all its water appropriations. The appropriation granted the right to take 1,020 cubic feet of water per second of time from the Pecos river. Its point of diversion of water from the river is lowest down, the Cedarvale next above, and the Farmers' Independent system is highest up the stream. And the defendants are all in their organization and appropriations of water subsequent in time to the plaintiff.

In the month of May, 1908, Wm. P. Clarkson, trustee in an instrument securing certain bondholders, brought suit against and secured a decree in the Circuit Court of the United States:

"That it is agreed between the parties that Biggs (now Ward County No. 3) shall have * * * the right to his equitable portion of the natural and ordinary flow of the water for irrigating named sections of land, and the plaintiff, Ward County Irrigation Company (now Ward county district No. 1, and plaintiff herein) is hereby decreed the prior right to the use of the waters * * * necessary for irrigation purposes upon the riparian and non-riparian land covered by its system."

This decree contained no restraining order, but provides:

"That upon the failure of either of the parties hereto to observe and comply with the terms of this decree a temporary injunction shall issue at the instance of the complaining party, upon filing bond," etc.

In 1910 John Miller and others using water under the Barstow Irrigation Company sued the then owners of the present Ward county No. 3, appellant, to restrain the use of waters, in the state court, No. 301. The judgment rendered therein was reversed by this court and remanded for new trial. See Biggs v. Miller, 147 S. W. 632. Afterwards the present plaintiff intervened and was substituted as sole plaintiff, and for cause of action set up priority of appropriation of waters to the extent of 1,020 cubic feet per second of time; set up the Clarkson decree in the United States court; charged that the defendants were bound by its terms, and that defendants had violated it by diverting and wasting, etc., the waters to such an extent as to deprive it of the waters to which it was entitled under the decree, and to which it was in law entitled independent of the decree.

Upon trial of this case, January, 1915, judgment was entered, in which the decree of the United States court above noted was specifically adopted, and the provisions thereof applicable to Clarkson, trustee, made applicable to Ward county irrigation district No. 1, and the provisions applicable to S. V. Biggs made applicable to the Biggs irrigation system and others (now Ward county No. 3).

The instant suit was filed in March, 1918; for cause of action set up its prior charter and appropriation; alleged its use of the waters of the Pecos river commencing in 1889, and continuing up to the present; set up both decrees above described; and charged that the defendants were violating these provisions to such an extent as to deprive it of water for many acres of land, to its damage; prayed that the writ of injunction issue, and being substantially a copy of the petition in the case of Miller v. Biggs, above quoted. A temporary restraining order was entered by the court.

The appellant district No. 3 answered by plea of res adjudicata by reason of the above-described judgments; because the writ was denied in those cases and no new element has been pleaded in this case, no writ should now issue; pleaded the bar of statute, three, five and ten years limitations, and specific denials, and adopts the answer and cross-action of defendant Cedarvale Canal Company; and the latter answered by plea to the jurisdiction, in that the United States Circuit Court had exclusive jurisdiction; that the issues had been determined in the case of Biggs v. Miller; set up specific reasons why it is entitled to water as against plaintiff; set up a cross-action, which will be more specifically described later; pleaded limitation of three, five, and ten years and that their use of the waters did not interfere with plaintiff.

The case was submitted to the jury upon special issues, and upon the answers thereto judgment was entered as follows:

It first recites that the pleas in bar were submitted to the jury and upon their finding thereon in favor of plaintiff overruled.

The following are the special issues and answers:

"Q. No. 1. What do you find to be the normal flow of the Pecos river? A. We find the normal flow to be 90 second feet.

"Q. No. 2. How often do you find it is reasonably necessary to irrigate crops under the system in question during the crop growing season? A. Once each 30 days.

"Q. No. 3. (a) Is it more practicable and economical to allow one system exclusive use of all the normal flow of the water available in the river for a given period of days, and then allow the other system the exclusive use for a given number of days? (b) Or is it more practicable and economical to allow each system a percentage of the normal flow of the river? A. (a) Yes. (b) No.

"Q. No. 4. If you have answered section (a) of question No. 3 affirmatively, please state number of days you find to be reasonably necessary to irrigate the lands now in cultivation under defendants' system (Biggs system) in sections 52, 53, 54, 55, 56, 57, 58, 59, in block 33. A. Five and one-half days."

Then follows:

"It is therefore ordered, adjudged, and decreed * * * that the water available to the parties * * * for irrigation purposes in the Pecos river from time to time be, and the same is hereby, apportioned between the system of the plaintiff Ward county irrigation district No. 1 and the system of defendant Ward county improvement district No. 3 in the following manner: Beginning at 12 noon on the 1st day of June, 1921, the water is awarded to defendant * * * for the purpose of irrigating such lands as may be served by the defendants' system in sections 52 to 59, inclusive, in block 33, H. & T. C. Ry. Co. survey, in Ward county, Tex., exclusive of lands belonging to L. D. Boxley, for a period of 5½ days, * * * and at the expiration of said period * * * said * * * district No. 3 shall promptly desist from taking any waters * * * for the remainder of the said month.

"It is further ordered that said * * * defendant and its agents, etc., be, and they are, * * * restrained from using any of the waters of the Pecos river for irrigation purposes except in conformity with this decree."

And the plaintiff is restrained from interfering with such use for said period. Costs of suit are divided equally between the said parties.

Ward county improvement district No. 3 and the Cherokee Land Irrigation & Investment Company, T. L. Patrick, and J. W. Dresser filed their appeal bond, which recites that portion of the judgment restraining in favor of appellee the said district No. 3 from taking water during the 5½ days, and makes the bond payable to district No. 1 only, in case of default.

## Opinion.

[1] First, appellants say that the court erred in receiving as evidence or giving any effect to the decree in the Clarkson Case in the United States Circuit Court, and the decree in the Biggs-Miller Case in the state court (above described) because void for the reason that they are incapable of enforcement, in that they are vague and uncertain and contain no final definite order that is capable of enforcement.

It will be noted in the above statement that the decree of the United States court was an agreed judgment between the parties, and that it specifically awards to appellees' (herein) predecessors the right to the prior use of the waters of the Pecos river to the extent of its original appropriations "as set out in the original bill." This was 1,020 cubic feet per second of time, and further provided that the defendants should not interfere with the plaintiff in its taking and use thereof, and if they did upon showing give bond, etc., they should be restrained by an order of that court.

This court held in the Biggs v. Miller Case (opinion reported 147 S. W. 632) upon this question that—

"The federal decree is res adjudicata of the matters determined or as to the matters fairly within the scope of the pleadings. Two things, however, are apparent: First, that, conceding said decree to be res adjudicata, it would not follow as contended by appellants, that this suit should abate; for, even though the federal decree is res adjudicata, it would not deprive the state court of the power to entertain jurisdiction for the purpose of enforcement * * * of the federal decree."

This ruling is the law applicable to the points urged. These decrees did not contain restraining orders, but provided that the order would be entered, and the processes of the court issued upon proper showing that the decrees as to property rights were violated.

These judgments being predicated upon the agreements of the parties, the court would not then enter its order for process upon the presumption that the parties would proceed to violate the provisions of this agreement and the decree of the court.

[2] The court did not err in rejecting the testimony of witness P. M. Maulding on the plea in bar offered to prove the customary diversion of water by defendants and their predecessors from the year 1908 to 1918, because, if admissible, it would be in the hearing upon the main case, to show that defendants were not taking during that time any water to which plaintiff was entitled, and for that reason no restraining order should be issued against defendants, but not upon any question plead in bar.

[3] The plaintiff made the Farmers' Independent Canal Company a party defendant. The Cedarvale Canal Company and Ward county improvement district No. 3 in their answer prayed that the individuals using water under the first-named company be made parties to this suit, because there was a contract between the plaintiff and said

defendant whereby water was to be diverted from the intake of the Farmers' Company, which was above all of the others, and taken through the headgates of said defendants to plaintiff water users. The court granted the order. The trial of the case was postponed, and upon announcement of ready at the date of trial the court rescinded the first order upon motion of plaintiff and defendant Farmers' system, and dismissed the cross-action. The appellant urges that it was error for the court to so do and to refuse to abate the suit until said water users were made parties by plaintiff. In this there was no error. The plaintiff sued these three defendants to confirm and enforce its water rights under the agreements and judgments plead. The individual water users were not necessary parties to this suit. If they were proper parties to any cause of action plead by the complaining defendants which could properly be litigated in this suit, it was their duty to seasonably make them parties, and it was not error for the court to refuse to again postpone the trial to enable them to do so. There is no appeal from this action of the court. The judgment dismissed the Farmers' Canal Company with its costs.

Appellants suggest that the opinion of this court in Biggs v. Miller held that the Farmers' Independent district was a necessary party to that suit, and seem to contend that the ruling applies to this case. Following the order of this court upon the after trial of the case, it was made a party by plaintiff, and the issues between the parties litigated and settled by the court, and no appeal was taken from that judgment.

[4] The plaintiff in the instant case makes no complaint as to the Farmers' Independent district in respect to the matters set up in appellants' cross-action against it, viz. the act of taking waters and conveying them to lands on the west side of the river, under contract with and which lands are under plaintiff's system, so it would in no event be required to make parties defendant to its suit that some matter between the defendants about which it had no interest might be litigated.

[5] Appellant again contends that the appellee violated the letter and spirit of the temporary injunction by entering into the aforesaid contract with the Farmers' Independent Canal Company to divert waters above appellants' headgate and deliver it on lands within appellee's system, and are estopped thereby. There is no element of the principle of estoppel in this. Appellee had its decree of court fixing the amount of water it was entitled to and the time each month for taking by temporary injunction, so, even though it be conceded that it was guilty of the act charged, it would not in any wise forfeit its right under the judgments to water.

The court did not err in excluding water right contracts between appellees and the owners of lands served under its system. There is no question of individual water rights involved in this suit.

By the fifth assignment and the fifth proposition it is urged that the decree in this case awards to plaintiff more water than the evidence proves the lands within its boundaries susceptible to irrigation or now being irrigated actually need.

The plaintiff's petition in this case is sufficient to support a judgment for 1,020 cubic feet, but prays both that the appellant "be restrained from diverting water except when there is flowing in the river more than 600 cubic feet per second continuous flow of water," and "from taking and diverting from the river the waters thereof decreed to this plaintiff and its predecessors in interest by said two decrees and each of them."

[6] The question here is: Does the decree award the appellants all the water they are entitled to? Appellants by the decrees sued upon were granted their equitable proportion of the natural and ordinary flow of the waters of said river for the purpose of irrigating such riparian sections as was then being served, naming them. The verdict and judgment in the instant case is that appellants shall have the flow of the river in their canal for 5½ days continuous flow for the same lands.

It is clear that in arriving at their verdict the jury made its estimate upon the basis of measurement invoked by appellants, viz. cubic feet per second of time. The testimony was all upon that basis both as to the normal flow of the river and the amount of water required to irrigate the acreage for which appellants had been adjudged to have the right to the use of water. If this is not the number of acres for which appellants had the right to water at the time of the entry of the final judgment in the Biggs-Miller Case, above noted, then appellants' predecessors should not have agreed to it, and should have appealed and had the finding reviewed. It does not appear that appellants claim here that they cannot get this amount of water for these sections through their canals within the time allowed from the normal flow of the river, but that the decree does not provide for the abnormal or flood time flow which might be used on lands now under its system, and not under it when the decree was entered, including nonriparian lands. This is well taken. It should have been framed having in view the findings of the jury, viz. the normal flow of the river, and apportion and distribute the normal flow, and not the flood waters, so as to clearly leave to appellants the privilege of taking at any and all times such waters as the appellee, being lower on the stream, cannot take with the full capacity of its canal. As

it now reads, the appellants are restrained from taking any water during each month after it has had its 5½ days service.

Whilst appellee has been awarded title to 1,020 cubic feet of water for the lands under its system for all time, this decree must be construed to mean that appellee irrigation company has the lawful right to the use of this water at such times as it can and does take it for a beneficial use, and not that it has the right to prevent others taking it, by injunction or otherwise, when it is not in fact taking it.

On the other hand, if another should begin the use of these waters in such a manner as that by time title might be acquired by limitation or prescription to the extent of wiping out appellees' title it would devolve upon the latter, if it would perpetuate its rights, to seasonably file suit to stop the running of the statute, as was done in this case.'

[7] Appellants say that the pleadings and proof will not support the restraining order. We think both are sufficient. The pleadings are sufficiently quoted above, and it would serve no good purpose to quote the evidence.

In this connection appellants assign error in the refusal of the court to submit certain special issues which called for findings of the jury upon the question whether there existed any difference between the relative condition of the parties at the time of bringing this suit to that existing at the date of the entry of the Biggs-Miller judgment, the point being that, if there was not, then the injunction should not issue.

The evidence conclusively shows that appellants had committed and were committing acts in violation of the decree, and there is no evidence of any probative force to the contrary. It was therefore not error to refuse to submit the question.

The sixteenth charges error in excluding the testimony offered by appellants as to prescriptive rights acquired. In this there was no error; for, if we are correct in holding that the judgments and agreements are valid and binding, their several dates show conclusively that there was not time to mature a prescriptive right in appellants.

[8] It is urged that the plaintiff forfeited its alleged prior right by changing its headgate without authority of the board of water engineers of the state. The statute fixes a penalty, but does not forfeit water rights in such instances. Besides, there is no evidence that this occurred.

[9] There is no question of superseding this judgment. The temporary injunction order was not appealed from, and defendants, appellants here, answered that it had obeyed it, so it remains in effect pending this appeal.

[10] This is the third suit instituted by the appellee in an effort to prevent the appellant and its predecessors encroaching upon its water appropriations, and in each instance it secured an affirmative judgment in its favor. It (appellee) was not satisfied with the judgment entered in this case and filed a motion for a new trial which was overruled; therefore the case will not be reversed for the erroneous matters contained in the formal decree, but same will here be reformed and affirmed in accordance with the true meaning of the verdict and in consonance with the rules of law applicable.

The court having taken into his own hands the framing of a method for distributing the waters without the sanction of either party so far as this record discloses, and it not affirmatively appearing that it is not the most practical way to apportion it, so that a definite test may be made of whether the restraining order is violated at any future date, and since appellee secures by judgment all the relief prayed for, the costs of the trial court, as well as of appeal, will be taxed to appellants.

Reformed and affirmed.